CHANCERY.        **Ewing's Adm'r. *vs* Beauchamp &c.**

*Case* 89.         APPEAL FROM THE WASHINGTON CIRCUIT.

*Specific performance.    Lapse of time.    Innocent purcha-*
*sers.*

*April 27.*     JUDGE BRECK delivered the opinion of the Court.

                IN February, 1795, Charles Ewing sold to Jeroboam

The case stated. Beauchamp four hundred acres of land, situate in the
then county of Washington and present county of Marion,
and executed his band for a conveyance, to be made "with-
in three days notice" after payment of the first instalment
of the purchase money. The purchase money was £350,
one hundred of which was to be paid in one month after
the sale, one hundred on the 25th December next there-
after, and the residue in October 1796.

In 1799, Ewing commenced suit upon the bond for
the second instalment; the first and third having been
paid, in the Bardstown District Court, and in 1801, re-
covered a judgment. In virtue of an execution which
issued upon this judgment, a portion of the land was sold
and purchased by one Thomas Mudd, who executed a
sale bond for the purchase money, being the whole
amount of the execution. In 1802, Beauchamp exhibi-
ted his bill in chancery, setting forth his purchase from
Ewing, who, he alledged, had failed to make him a con-
veyance, and whose title he was informed, was defective;
and further alledging various matters against the judg-
ment, and that the sale under execution was illegal, fraud-
ulent, and void. He made Ewing and Mudd defendants,
and obtained an injunction restraining the collection of
the sale bond and the judgment at law, and prayed that
the sale might be set aside, and for relief against the
judgment. The controversy was kept up between the
parties during the life of Ewing, who died in 1809, and
after his death it has been continued between his admin-
istrator and Beauchamp, with occasional intervals of re-
pose, ever since.

In 1814, this suit, commenced in 1802, and a subsequent one in 1803, in which a second injunction was obtained by Beauchamp, were finally disposed of by this Court, and the opinion returned and entered as the decree of the Nelson Circuit Court, in October of that year. That decree awarded to Ewing's administrator £100; £69 13 interest, £10, being 10 per cent. damages, and also costs. The sale of a portion of the land and the purchase by Mudd under the execution of Ewing against Beauchamp, and against which the latter sought relief in his several bills, seems never to have been adjudicated upon or noticed in any way, either by the Court below or by this Court.

In entering this decree, the word complainant was used instead of defendant, and also the word defendant where it should have been complainant, thus rendering the decree in favor of Beauchamp instead of Ewing's administrator.

In 1817, this obvious mistake, after much controversy, was corrected, as being a mere clerical misprison; upon this decree Ewing's administrator commenced a suit at law in 1830, and in 1831 recovered a judgment against Beauchamp for $271 44, including costs. Execution upon this judgment having been returned, *no property found*, the administrator exhibited this bill against Beauchamp, alledging the foregoing facts, and asserting a lien upon the land sold him by Ewing, and praying that it might be subjected to the payment of his judgment at law, as being part of the purchase money. He alledged that William Mudd, William Russell, James Russell, Mathew Cissell, and Zachariah Cissell, to whom Beauchamp had sold or leased the land, were in possession. They were all made parties, and also the heirs of Ewing.

The Court, on final hearing, dismissed the bill absolutely, as to Mudd, Russell, &c., and without prejudice as to Beauchamp, and the complainant has appealed to this Court.

Decree of the Circuit Court.

Before examining the merits of the case, we will dispose of an alledged error in the Circuit Judge, in regard to the filing of the answers of two of the defendants.

EwING's ADM'R.    In 1834, the complainant's bill was taken for confes-
vs
BEAUCHAMP, &c.   sed, against the defendants James Russel, Zachariah Cis-
sell and Matthew Cissel.

In 1843, the Court permitted the two former to file their
It was not ad a-   answers, a motion to file them a year or two before, having
buse of discre-
tion by a Circuit   been overruled,   As the reason of the delay, they state
Judge to permit   that the defendant Beauchamp, under whom they claim
an answer to be
filed, altho' the   portions of the land in controversy, and who was reputed
leave had been
refused a year or   a good Judge. of law, had informed them that his de-
two before, when   fence in the cause would render it unnecessary for them
complainant had
but recently filed   to pay any attention to it, and that they had but recently
an amended bill.    learned to the contrary.   They offer to submit to such
terms as the Court may impose.   It further appears, that
at the term when these defendants were permitted to file
their answers, an amended bill had been filed by the com-
plainants  and the cause continued on his motion.

This Court would only feel authorized to disturb the
action of the Circuit Judge  upon a question of this kind,
when there  had  been  a manifest abuse of discretion,
which, under the circumstances in this case, we think,
does not appear.

In considering the merits of the controversy, we deem
A purchaser af-   it unnecessary to enquire whether the complainant in vir-
ter a possession
of twenty years,   tue of the lien, which he asserts, or of the return of nul-
sells to others,
who are ignorant   la bona upon his execution, has  manifested his right to
of any claim by   relief as against Beauchampe, provided he were still the
the vendor for an
unpaid balance   owner of the land, or had any interest therein.   It suffici-
of  the  price—
Held that they   ently appears that Beauchampe had sold the land more
could not be dis-   than fifteen years before the exhibition of complainant's
turbed  nor  the
land thus pur-   bill, and at that time had no interest in it whatever.   The
chased rendered
liable  for  the   enquiry then is, whether the lien set up should be enforc-
balance due for   ed as against his vendees.   The defendant, Mudd, claims
the lands, in a
suit brought 37   about one hundred and ninety acres of the land, purcha-
years after the
first purchase.    sed from Beauchamp  more than twenty years after his
purchase from Ewing,  and  exhibits Beauchamp's deed
made and recorded in  1826.   William  Russell claims
one hundred and twenty seven acres, purchased about the
same time, and relies upon a deed from Beauchamp made
and recorded also in 1826.

The defendant, James Russell, claims a portion of the
land as sub-purchaser from Mudd.

Zachariah Cissell claims one hundred and fourteen acres by purchase from Beauchamp, made also more than twenty years after his purchase from Ewing. But he exhibits no written evidence of his purchase. The testimony, however, introduced by the complainant as well as the defendants, very clearly establishes the fact of his purchase about the year 1817, and that he then obtained the possession and has ever since continued to claim, possess and cultivate it.

The complainant alledges that "the defendant Beauchamp had either sold or leased the land to the defendants Mudd," &c. Beauchamp answers that he has sold it to them, and they answer claiming it as purchasers; and their answers are sustained by the testimony. There is no proof, it is true, as to the consideration of the purchase by Z. Cissell: but in view of the allegation in complainants bill, the answer, the proof and the lapse of time, the presumption, we think, is clearly authorized that he was a purchaser for a valuable consideration and which had been paid.

Matthew Cissell did not answer, and the complainant's bill was taken for confessed against him. The proof does not show that he claimed or was in possession of any part of the land, and from the fact that the quantity claimed by the other defendants exceeds the four hundred acres purchased from Ewing, independant of the hundred acres conveyed by Ewing to the vendee of Beauchamp in 1802, the presumption is that he neither claimed nor was in possession of any part of it. Besides it very satisfactorily appears that Beauchamp sold out his entire claim to Mudd, William Russell and Zachariah Cissell. We are, therefore, of opinion that the mere failure of Matthew Cissell to answer, did not furnish sufficient ground upon which any decree in favor of the complainant could be based.

Regarding then the defendants Mudd, William Russell and Zachariah Cissell, as purchasers under Beauchamp and for a valuable consideration, ought the lien set up by complainant to be enforced against them? They all deny having any knowledge or notice of the character of their vendor's purchase from Ewing, whether by executed

Ewing's adm'r.
vs
Beauchamp, &c. or executory contract, or that any portion of the purchase money remained unpaid, and there is nothing in the record even conducing to prove either actual or constructive notice.

This litigation between Beauchamp and Ewing and his administrator, commenced in the Bardstown District Court and was subsequently transferred to the Nelson Circuit Court; the land lay in Washington county. Prior to the exhibition of complainant's bill, there was never any *lis pen dens*, no suit in which the question of lien was involved; and at the time the defendants purchased, there does not appear to have been a suit of any kind pending between the parties; they purchased several years after the controversy had been brought to a close by the decree of this Court and the mandate thereof had been returned and entered in the Court below. Beauchamp at the time of their purchase had been more than twenty years in the actual undisturbed possession, claiming the land as his own. When this bill was filed thirty seven years had elapsed since Beauchamp entered and took possessoin. As *bona fide* purchasers for a valuable consideration without notice, are not the defendants entitled to all the presumptions which the law raises from so great a lapse of time? The law after a lapse of twenty years raises a presumption of title in the vendee, and of the payment of the purchase money. This presumption however, may be repelled. After a lapse of thirty seven years ought not the presumption so far as these defendants, purchasers without, notice are concerned, to be conclusive as to title as well as the payment of the purchase money, and as against them, not subject to be repelled? We are strongly inclined to that opinion, but if even liable to be repelled, it may be well questioned whether the testimony in the record as against them is sufficient. But if mistaken in this, there is another view of the case, in which, we think, the Chancellor was fully justified in withholding the relief sought. This is in effect an application for a specific execution of the contract, between Ewing and Beauchamp.

The Chancellor has a discretion A decree for specific execution or performance, is by no means a matter of course, but rests entirely in the

discretion of the Chancellor, upon a view of all the circumstances. This application is made after a lapse of thirty seven years. No satisfactory reason for the delay is alledged or shown. Ewing, in his lifetime, labored under no disability to make it, nor has his administrator, since his death. The infancy of the heirs of Ewing, or of a portion of them, opposed no obstacle to his seeking relief in a Court of Equity. The contest between the administrator and Beauchamp, was finally settled, as we have seen, by the decree of this Court in 1814. For eighteen years afterwards, the complainant slumbers without any assertion of lien or claim upon this land. He stands by and sees the defendants purchase and pay for it, settle upon and improve it, without notice or even an intimation of any lien or incumbrance upon it. What efforts were made to enforce the complainant's decree of 1814, from that time till 1830, does not appear. When the complainant renewed his efforts in 1830, he again commenced at law, and in 1832, after his effort had failed, and when Beauchamp was hopelessly insolvent, and the land had passed into the hands of *bona fide* purchasers he for the first time, appeals to a Court of Equity and prays a specific execution of the contract of his intestate and Beauchamp, made thirty seven years before. It seems to us the application comes too late ; that it is asking too much of the Chancellor, and more especially when the applicant has slumbered so long and so sound, and manifested such seeming indifference and neglect. He should be regarded, under such circumstances, as having waived his lien as to *bona fide* purchasers. The complainant should be left still to pursue his remedy at law.

The complainant sought no adjustment of the claims of Beauchamp against the estate of Ewing, and which were set up and relied on by way of off-sett in Beauchamp's cross bill. The Court, therefore, did not err in failing to go on and settle the opposing claims of the parties. At all events, there was no error of which the complainant has any right to complain.

Wherefore, the decree is affirmed.

*C. A. Wickliffe* for appellant : *Shuck* for appellees.

EWING'S ADM'R.
*vs*
BEAUCHAMP, &c.

in decreeing the specific execution of contracts. He will not decree a specific execution at the instance of a vendor after a lapse of 27 years without a satisfactory reason for the delay, to the prejudice of sub-purchasers of vendee.